UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ERIN EPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 1:04-cv-0870-DFH-TAB |
| MARION COUNTY SHERIFF'S | ) | |
| OFFICER THOMAS SMITH, MARION | ) | |
| COUNTY SHERIFF'S OFFICER HENRY | ) | |
| GREGORY, MARION COUNTY | ) | |
| SHERIFF'S OFFICER BOGDAN | ) | |
| GOLINSKI, MARION COUNTY | ) | |
| SHERIFF, INDIANAPOLIS PARK | ) | |
| RANGER JOSEPH PARNIN, and | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On August 31, 2003, Mr. Erin Epp went into hypoglycemic shock while driving on Interstate 465 in Indianapolis. He exited the highway and drove to a Taco Bell restaurant to get food and raise his blood sugar. Epp had trouble navigating the drive-through lane. An employee at a neighboring restaurant saw him, believed he was an intoxicated driver, and called 911.

The key details of the events that followed are sharply in dispute. Marion County Sheriff Deputies Henry Gregory and Thomas Smith and Indianapolis Park

Ranger Joseph Parnin ("Defendant Officers") all came to the scene.[1]  According to the Defendant Officers, Epp refused to cooperate with their order to exit his vehicle, and they used moderate force to detain him.  According to Epp, the officers dragged him out of his car, drove him to the ground, and beat and handcuffed him despite his complete lack of resistance.

Epp seeks damages under 42 U.S.C. § 1983, alleging that the Defendant Officers violated his Fourth Amendment rights by using excessive force during his detention.  Epp has also brought state law battery claims against all Defendant Officers and their employers, the Marion County Sheriff and the City of Indianapolis.[2]  All defendants have moved for summary judgment on all claims.[3]

Because many of the material facts are in sharp dispute, defendants' motion for summary judgment is denied with respect to all excessive force and battery claims.  Viewing the evidence in the light reasonably most favorable to plaintiff

---

[1]Epp has voluntarily dismissed Marion County Sheriff Deputy Bogdan Golinski from this case with prejudice.  See Docket No. 35.

[2]Epp has voluntarily withdrawn his federal and state false arrest claims against all defendants.  See Pl. Br. at 3 n.2, 11.  Also, he is not seeking damages directly from the municipal governments under § 1983 on a theory of unconstitutional policy, custom, or practice.  See Pl. Br. at 3, 25.

[3]The parties have agreed to stay all proceedings related to Deputy Thomas Smith who is presently serving on active military duty.  See Case Management Plan at 8 n.2 (approved Oct. 15, 2004).  The court has authority to stay proceedings related to Smith under 50 App. U.S.C. § 521.  As the stay was in effect at the time this motion was filed, the motion is considered a nullity with respect to Smith.  Cf. *USX Corp. v. Penn Central Corp.*, 130 F.3d 562, 567 (3d Cir. 1997) (holding that parties' stipulated stay remained in effect, thereby rendering previously filed summary judgment motion a nullity).

Epp, a reasonable jury could find that Defendant Officers used excessive force against him.  Because plaintiff's evidence, if credited, shows violations of clearly established constitutional law, qualified immunity does not apply to his § 1983 claims.  Also, under *Kemezy v. Peters*, 622 N.E.2d 1296 (Ind. 1993), defendants are not entitled to immunity on plaintiff's state law claims for battery.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving parties entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving parties must show there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law.  *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering defendants' motion, the court must consider the evidence in the light most favorable to the opposing party, giving plaintiff the benefit of all conflicts in the evidence and all reasonable favorable inferences from the evidence.

See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 323.   In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party.  *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (reversing summary judgment for defendant in excessive force case).

## *Facts for Summary Judgment*

If the events were as described by the defendants in their testimony, plaintiff would not have any valid claims.   But by moving for summary judgment, defendants have asked the court to apply the law to only the plaintiff's version of these sharply contested events.  The following account of the relevant facts is not necessarily accurate.   It is the plaintiff's version of the events, giving him the benefit of all conflicts in the evidence and any reasonable and favorable inferences from the evidence.   Some facts from the defendants' evidence are undisputed, though, for purposes of defendants' motion.

On August 31, 2003, Erin Epp was driving to Tipton, Indiana along Interstate 465 in Indianapolis, Indiana.  See Epp Dep. 22-25.  His three young children were in the car.  At approximately 10:00 p.m., Epp chose to exit the interstate.  He realized he had begun to suffer low blood sugar (hypoglycemia) due to his Type I diabetes.  He was having trouble seeing.  Epp testified that a typical

hypoglycemic episode produces symptoms of loss of motor skill, loss of cognitive skill, impaired speech and vison, sweating, slower mobility, and feelings of fatigue, shakiness, lightheadedness, and dizziness. See *id.* at 8-12. Epp also suffers from multiple sclerosis, which hinders his cognitive skills and affects his dexterity and motor skills, especially the day-to-day functioning of his fingers, hands, and feet. On the evening of August 31st, Epp was experiencing typical symptoms of a hypoglycemic episode combined with his multiple sclerosis.

Epp exited the interstate and entered a parking lot for a Rally's restaurant and a Taco Bell restaurant. *Id.* at 25. Epp attempted to navigate the drive-through lane of the Taco Bell but was not successful. He then began to urinate in his pants and exited the vehicle to continue urinating outside, away from public view. *Id.* at 26. Epp returned to his vehicle, intending to try to use the drive-through lane once again. *Id.* at 30-31. He was sitting in the driver's seat of his vehicle trying to operate his vehicle to obtain food when law enforcement officers arrived. *Id.*

Deputy Henry Gregory was the first law enforcement officer on the scene. Gregory Dep. at 15. Dispatch told Gregory that Rally's employees had contacted 911 after first seeing a gray vehicle drive in circles in the parking lot and then seeing the driver urinating on a trash dumpster. Dispatch told Gregory that the run was for a possible intoxicated driver. *Id.* at 9-11.

Defendants assert and plaintiff does not dispute that, when Deputy Gregory arrived, he first spoke with a Rally's employee standing outside of the restaurant. *Id.* at 13-14.  The employee pointed to Epp's vehicle and told Gregory that the vehicle had done circles in the lot and that a white male had exited the vehicle and urinated on a dumpster.  *Id.* at 14.  Deputy Gregory positioned his squad car in a tactically safe position behind Epp's vehicle.  *Id.*  Gregory then approached Epp's vehicle and observed two children asleep in the back seat.  *Id.* at 16.  Gregory observed Epp behind the wheel of his car, appearing unconscious or asleep.  *Id.*

Epp testified that a police officer approached his vehicle and asked for his driver's license and registration.  Epp Dep. at 32.  Epp tried to explain to the approaching officer that the information was in his glove box and wallet, and that he was suffering from hypoglycemia and could not provide them himself.  *Id.* Deputy Gregory confirms that Epp was attempting to get his license and registration.  Gregory Dep. at 18.  Gregory did not observe whether Epp's eyes were watery or bloodshot, and he did not detect the odor of alcohol on Epp. Gregory saw no open containers of alcoholic beverages in the car.  *Id.* at 21-24.

At some point, two other officers, defendants Deputy Thomas Smith and Park Ranger Joseph Parnin, arrived on the scene.  Gregory Dep. at 25, 28.  The parties seem to agree that at the moment Deputy Smith arrived at the vehicle, Deputy Gregory observed that Epp was partially conscious, as if he were going to sleep.  Gregory Dep. at 25; Pl. Resp. Br. at 14.  While defendants contend that

only Deputies Gregory and Smith approached Epp while he was still inside his vehicle, plaintiff Epp offers the testimony of Cynthia Sturm, a Taco Bell manager, who observed two or three officers approaching Epp's vehicle.  Sturm Aff. ¶ 7.

The parties sharply dispute what happened next.  Epp testified that he does not believe the officers asked him to exit his vehicle.  Epp Dep. at 38.  Epp testified that he did not orally refuse to exit the vehicle or raise his voice at the officers at any time during their encounter.  *Id.* at 38, 80.  Epp admits that he had trouble communicating effectively with the officers.  *Id.*  Prior to being removed from his vehicle, Epp also attempted to explain that medical supplies for the treatment of his condition were in the cabin of his vehicle.  *Id.* at 40.  Epp seems to credit Deputy Gregory's testimony that Epp turned to face him when the officers opened his car door, and that Epp placed at least one foot outside the vehicle.  See Pl. Resp. Br. at 17; Gregory Dep. at 26-27.  Epp testified that he did not kick any of the Defendant Officers.  Epp. Decl. ¶ 2.

Plaintiff's evidence, if credited, shows that two officers opened his driver-side door, pulled him from his car, lifted him above the ground from under his armpits, and drove him head first into the ground.  Epp Dep. at 34-35.  The officers then put Epp's arms behind him and handcuffed him.  *Id.* at 35.  Epp testified that he offered no resistance or force to any actions by the officers.  *Id.* at 35; Epp. Decl. ¶¶ 3-4.  Park Ranger Parnin admits at least to holding Epp's feet as the other

officers handcuffed him.  Parnin Dep. at 14.  Parnin said that "not much" force was required to hold Epp's legs.  *Id.* at 19.

While on the ground, and in the process of being handcuffed, Epp received blows to his head and his back.  Epp Dep. at 35-36.  Ms. Sturm testified that the Defendant Officers pummeled Epp for about a minute.  Sturm Aff. ¶¶ 9, 11.  Epp continued his attempts to explain that he was a diabetic who was experiencing hypoglycemic shock.  Epp Dep. at 36-37.  Defendant Officers accused him of being a drunk and endangering his children and the public.  *Id.* at 37.  They told him he was going to jail.  *Id.*  Epp described Defendant Officers' tone in dealing with him as loud, abrasive, and overpowering.  He also recalls them laughing and joking among themselves in way he describes as "callous" and "almost catty."  *Id.* at 73-74.

The parties agree that at some point, the Defendant Officers called an ambulance for Epp.  Epp Dep. at 38; Gregory Dep. at 34.  They disagree, however, as to the reason why it was called.  The ambulance report shows that it was dispatched to treat him as a resister, not for his diabetic condition.  See Pl. Ex. 6.  As the ambulance arrived on the scene, Defendant Officers removed Epp's handcuffs.  Epp Dep. at 38.

As a result of the incident, Epp suffered abrasions on his cheek, forehead, and knees, as well as pain in his ribs and bruises on his back.  *Id.* at 74, 81-83.

After the ambulance arrived, someone bought some food for Epp, which quickly returned his blood sugar level to normal.  He was not arrested but was allowed to go on his way with his children to his original destination in Tipton.  *Id.* at 41-42.

*Discussion*

I.    *Excessive Force*

Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983, which provides a cause of action against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."   Epp contends that the Defendant Officers violated his Fourth Amendment right to be free from excessive force.

When a law enforcement officer is alleged to have used excessive force in the course of an arrest, investigatory stop, or other seizure of a person, the issue is whether the officer's actions were "objectively reasonable" in light of the situation faced by the officer.  *Graham v. Connor*, 490 U.S. 386, 397 (1989); *McNair v. Coffey*, 279 F.3d 463, 467 (7th Cir. 2002).  Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396; accord, *Morfin v. City of East Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003).  Balancing these factors is often a

question for a jury, though in some cases the issue can be decided as a matter of law.

A reasonable jury could find that it was excessive for officers to push to the ground and beat a driver who offered no resistance and attempted to provide a benign explanation for his physical condition.   Epp agrees that police officers faced with a possibly intoxicated and uncooperative driver may open the vehicle door and forcibly remove the driver from his vehicle.  See Pl. Br. at 18.  He objects to the degree of force the Defendant Officers used during and after removing him from his vehicle.

According to Epp, he was forcibly removed from his car, pulled up by his armpits, driven to the ground, and handcuffed with his arms behind him.  He was beaten for about a minute, resulting in physical injuries.  Giving Epp the benefit of reasonable favorable inferences from the evidence, the court must also assume he was beaten even after he was subdued on the ground and in handcuffs.  See Epp Dep. 36, 74.  According to plaintiff Epp's evidence, he was not resisting, using or threatening force, or attempting to flee.  Based on this evidence, a reasonable jury could find that Epp posed no immediate threat to the safety of others because he was seated in his car, fading in and out of consciousness, and blocked in by Deputy Gregory's vehicle.   Although the crime of driving while intoxicated is serious, a reasonable jury could conclude from plaintiff's evidence that Epp, both before and after he was removed from his vehicle, provided Defendant Officers

with sufficient information to inform a reasonable officer that he was not intoxicated but suffering a medical emergency. Under these circumstances, a reasonable jury could find that the Defendant Officers' use of force was not objectively reasonable under *Graham*.

Defendants rely on *Smith v. Ball State University*, 295 F.3d 763 (7th Cir. 2002), to assert that their actions did not violate the Constitution. In *Smith*, the Seventh Circuit affirmed summary judgment in favor of defendant officers alleged to have used excessive force against an unconscious driver. The plaintiff Smith was a student at Ball State University who lapsed into diabetic shock while driving his car through campus. *Id.* at 766. University police officers arrived at the scene and found Smith unresponsive. *Id.*

The court addressed three types of force used by the officers against Smith: his forcible removal from his car, an officer's failed attempt to apply a "knee strike" resulting in a tackle, and the use of handcuffs. *Id.* at 770. Accepting as fact that Smith offered no resistance, the Seventh Circuit nevertheless concluded that the officers had not used excessive force. First, the officers were justified in removing Smith from his vehicle because of the potential threat to public safety posed by an intoxicated driver. *Id.* Second, the tackling officer was reasonably mistaken in his belief that Smith and the other officers were engaged in a struggle when he attempted to apply a knee strike on Smith. *Id.* at 770-71. Finally, the use of handcuffs was "measured, brief, and appropriate" for securing Smith and his

vehicle.  *Id.* at 771.  The Seventh Circuit stressed the well established principle that courts must evaluate an officer's use of force as it appeared at the time of the encounter, and not with the benefit of hindsight.  *Id.*

Despite some obvious parallels, the situation facing the Defendant Officers here differed from the situation in *Smith* in several important ways that go directly to the heart of the reasonableness of the force used.  With respect to the most serious use of force in *Smith*, the attempted knee strike and resulting tackle, the undisputed evidence showed that the offending officer had just arrived on the scene and reasonably, though mistakenly, believed that the other officers were struggling with the subject.  *Id.* at 766-67.  In this case, however, according to plaintiff's evidence, Epp did not offer resistance at any time.  Unlike Smith, he actively attempted to explain his situation.  Defendant Officers' contact with Epp did not require the type of split-second decision-making that can sometimes justify the use of more force than might appear justified with the benefit of hindsight, as in *Smith*.

A reasonable jury could also find that Epp posed much less of a threat to the safety of the officers and the public than the plaintiff in *Smith*.  While Smith was unresponsive to the officer's request to exit his vehicle, a reasonable jury could find from plaintiff's evidence that Epp was never even asked to exit his vehicle but was asked only to produce his license and registration.  Further, a reasonable jury could find that more force was used on Epp than on the plaintiff

in *Smith*.   Smith was tackled by an officer and then held to the ground and handcuffed.   *Id.* at 766-67.   Epp testified that he was thrown to the ground, handcuffed, and, despite his complete lack of resistance, beaten for nearly a minute.   Even minor force against a subdued and restrained subject may be unconstitutional if completely gratuitous.   *E.g.*, *Frazell v. Flanigan*, 102 F.3d 877, 884 (7th Cir. 1996) (stating that a jury could have found the subject subdued and unable to escape and therefore deemed two blows to the back as "completely gratuitous and therefore objectively unreasonable"), abrogated on other grounds by *Saucier v. Katz*, 533 U.S. 194 (2001).

Under Epp's evidence, a reasonable jury could find that the Defendant Officers used excessive force.   Defendant Officers are not entitled to summary judgment on the merits of Epp's excessive force claim.[4]

---

[4]It is unclear when exactly Park Ranger Parnin arrived on the scene.   See Gregory Dep. at 28 ("And I believe at that time a third officer shows up at which time Deputy Smith and I are trying to handcuff him."); see also Sturm Aff. ¶¶ 8, 9, 11 (noting two or three officers approaching the vehicle with Mr. Epp inside). Plaintiff has a raised a genuine issue of fact as to whether Parnin participated in the use of force or failed to intervene in violation of § 1983.   See *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (officer may be held liable under § 1983 if he was present during the arrest and had reason to know "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.").   Park Ranger Parnin is therefore not entitled to summary judgment on the theory that he simply was not involved in the use of force.

II.   *Qualified Immunity*

The Defendant Officers have also asserted the defense of qualified immunity. A two-part test determines whether a government official is entitled to qualified immunity in a civil suit under § 1983.   *Saucier v. Katz*, 533 U.S. 194, 200-01(2001); see also *McNair*, 279 F.3d at 465; *Marshall v. Teske*, 284 F.3d 765, 771-72 (7th Cir. 2002).  First, a court asks whether the facts alleged demonstrate a constitutional violation when examined in the light most favorable to the plaintiff.  *Saucier*, 533 U.S. at 201.  If the facts as alleged reveal no constitutional violation, the inquiry ends and the officer prevails on the merits of the case.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that if there is no constitutional violation, there can be no liability on the part of the individual officer or the government body); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 596-97 (7th Cir. 1997).  If the facts alleged would amount to a constitutional violation, the court then examines whether the law was "clearly established" at the relevant time.  *Saucier*, 533 U.S. at 201; *Marshall*, 284 F.3d at 772.

On the first question, there is no doubt that plaintiff Epp has alleged a Fourth Amendment violation by the use of excessive force.  As shown above, he also has come forward with evidence sufficient to support the claim.  To answer the second question as to clearly established law, the court asks whether a reasonable public official facing the same factual circumstances that the defendants faced would have recognized at the time that his or her actions violated the Constitution.  *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987).

This question is not a broad question of abstract constitutional doctrine, but is specific to the particular circumstances.  See *Saucier*, 533 U.S. at 201.  Qualified immunity protects a government official even if she is reasonably mistaken about the law that applies to her actions.  *Forman v. Richmond Police Dep't*, 104 F.3d 950, 958 (7th Cir. 1997) (doctrine of qualified immunity gives "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law").  The burden is on the plaintiff to show that the right in question was "clearly established."  *Perry v. Sheahan*, 222 F.3d 309, 315 (7th Cir. 2000); *Marshall v. Allen*, 984 F.2d 787, 797 (7th Cir. 1993).

In answering this question on a motion for summary judgment, the court must view the record evidence through the summary judgment lens:  the non-moving party receives the benefit of the doubt where evidence conflicts, and he is entitled to reasonable inferences from the evidence.  Whether an officer's use of force was reasonable can be difficult to resolve as a matter of law on summary judgment where the parties' versions of events are as far apart as they are in this case.  See, *e.g.*, *Abdullahi v. City of Madison*, 423 F.3d 763, 775 (7th Cir. 2005) (reversing summary judgment for defendants on grounds of qualified immunity in excessive force case:  "Since the very nature of [defendant's] conduct remains undetermined, one can only speculate as to how visually obvious any violation of [plaintiff's] rights might have been."); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997) (reversing and remanding summary judgment on the pleadings in favor of defendant officer on excessive force claim:  "Because

we find that more facts are needed to evaluate whether excessive force was used, we necessarily must find that more facts are needed to determine whether immunity is available."); see also *Saucier*, 533 U.S. at 216 (Ginsburg, Stevens, and Breyer, JJ., concurring) ("Of course, if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official.").

Defendants cite *Siebert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001), to argue that plaintiff must come forward with a closely analogous case demonstrating that a reasonable officer would have known that his actions violated the Constitution in order to show that the right was clearly established. They further contend that the similarities between this case and *Smith v. Ball State University*, discussed above, demonstrate that a reasonable officer could have believed the Defendant Officers' conduct did not violate a constitutional right. However, *Siebert* identified two routes for proving a right as clearly established: (1) the violation was so obvious that a reasonable officer would have known what he or she was doing violated the Constitution, or (2) a closely analogous case establishes that the conduct is unconstitutional. *Id.*; accord, *Ulichny v. Merton Community School Dist.*, 249 F.3d 686, 706 (7th Cir. 2001) ("It is not necessary for liability . . . that an identical factual situation had been legally decided adverse to the officer.").

In this case, a reasonable jury could conclude that Defendant Officers used excessive force in obvious violation of Epp's Fourth Amendment rights.  Although Defendant Officers were entitled to detain Epp, the important question is whether they used excessive force during and after removing him from his vehicle.  As explained above, plaintiff's evidence shows a situation different in key respects from that in *Smith*.  For example, under Epp's evidence, a reasonable jury could find that the Defendant Officers learned of Epp's medical condition and then used unreasonable force.  Cf. *Frazell*, 102 F.3d at 885 (upholding judgment in favor of plaintiff bringing § 1983 excessive force claim:  "a reasonable jury could have found that Flanigan and the other officers knew that Frazell was having a seizure yet continued to treat him as someone who was resisting arrest").  And it is well established that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."  *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (dismissing appeal of denial of qualified immunity in excessive force case; although no closely analogous case alone rebutted qualified immunity, law was clearly established that police did not have the right to inflict "wholly gratuitous" force on a suspect who was subdued and not resisting).

Even assuming that the Defendant Officers believed at all times that Epp was intoxicated, a reasonable jury could still find that they used objectively unreasonable force in obvious violation of Epp's Fourth Amendment rights.  Cf. *Frazell*, 102 F.3d at 885 ("there is evidence from which a reasonable jury could

have concluded that the officers acted unreasonably regardless of the explanation for Frazell's conduct").  Giving credit to Epp's evidence on disputed issues of fact, Defendant Officers pulled him from his car, threw him to the ground, and beat him despite his attempts at cooperation and his lack of resistance.  As is often true in excessive force cases, (though not always, see *McNair v. Coffey*, 279 F.3d 463) the same factual disputes that preclude summary judgment on the merits of Epp's Fourth Amendment claim also preclude summary judgment on Defendant Officers' affirmative defense of qualified immunity.  See, *e.g.*, *Payne v. Pauley*, 337 F.3d 767, 780 (7th Cir. 2003) (factual disputes required reversal of summary judgment based on qualified immunity in excessive force case); *Ellis v. Wynalda*, 999 F.2d 243, 246-47 (7th Cir. 1993) (same).

Accordingly, Defendant Officers are not entitled to summary judgment on the federal claims under the doctrine of qualified immunity.

III.    *State Law Claims*

Plaintiff also asserts state law claims for battery against the individual Defendant Officers, Marion County Sheriff, and City of Indianapolis.  Under Indiana law, a police officer may only use that force in the discharge of his or her duties that is reasonable and necessary for affecting an arrest.  Ind. Code § 35-41-3-3(b).  If a police officer uses unnecessary or excessive force, he or she may be liable for assault and battery.  *Crawford v. City of Muncie*, 655 N.E.2d 614, 622 (Ind. App. 1995); *City of South Bend v. Fleming*, 397 N.E.2d 1075, 1077 (Ind. App.

1979).  Indiana's excessive force standard effectively parallels the federal standard outlined above.  See *O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. App. 2000).  Therefore, the same genuine issues of material fact that prevent this court from granting summary judgment on plaintiff's § 1983 claims also preclude summary judgment on plaintiff's state law claims.

Defendants contend that a provision in the Indiana Tort Claims Act (ITCA), Ind. Code § 34-13-3-3(8), bars plaintiffs' battery claims.  Under the immunity provisions of the ITCA, a government or government employee acting within the scope of his or her employment is not liable for injuries that result from "[t]he adoption and enforcement of or failure to adopt or enforce a law . . . unless the act of enforcement constitutes false arrest or false imprisonment."  Ind. Code § 34-13-3-3(8).  This immunity applies to both negligent and intentional torts.  *City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. App. 1999).

The issue under Indiana law is whether the ITCA law enforcement immunity provision applies to claims for injuries resulting from the use of excessive force during a detention or arrest.  In *Quakenbush v. Lackey*, 622 N.E.2d 1284, 1291 (Ind. 1993), the Indiana Supreme Court interpreted the provision to subject government employees to liability for losses stemming from the breach of a "private duty," but to immunize them from liability where the losses resulted from the breach of a "public duty."  On the same day that *Quakenbush* was decided, the Indiana Supreme Court answered a certified question from Judge Tinder in

*Kemezy v. Peters*, 622 N.E.2d 1296, 1297 (Ind. 1993).  The *Kemezy* opinion applied the *Quakenbush* private duty/public duty framework to hold that the ITCA did not immunize a police officer's use of excessive force because "law enforcement officers owe a private duty to refrain from using excessive force in the course of making arrests."  *Id.*

The question is more complex, however, because in *Benton v. Oakland City*, 721 N.E.2d 224, 230 (Ind. 1999), the Indiana Supreme Court abandoned the *Quakenbush* framework, finding that the distinction between public and private duties owed by government entities was "highly abstract" and impracticable. *Benton* dealt with different immunity provisions, for the claim was that the city had been negligent in operating a swimming area at a lake.  Defendants argue that *Benton* implicitly overruled *Kemezy* because it had relied upon the *Quakenbush* private duty/public duty test.  Defendants cite one Indiana court decision supporting this view, but this case addressed the issue only in *dicta*.  See *City of Anderson v. Davis*, 743 N.E.2d 359, 365 & 366 n.4 (Ind. App. 2001) ("It is unclear if a police officer enforcing the law in the scope of his employment would be exempt from immunity under the ITCA if his actions amounted to excessive force . . . However, we need not determine this question here because . . . the legality of the City's use of force was an issue resolved against Davis in the prior federal court action."); see also *Sellers v. Marion County Sheriff's Dept.*, 2002 WL 1630008, *5 (S.D. Ind. June 27, 2002) (McKinney, J.) (dismissing wrongful death claim stemming from alleged use of excessive force and discussing *Davis*).  Other

cases, including at least one post-*Benton* decision by the Indiana Court of Appeals, have declined to treat *Kemezy* as overruled.  *E.g.*, *O'Bannon*, 733 N.E.2d at 3 (recognizing that *Kemezy* had been "called into question," but affirming summary judgment because facts showed that police officers had not used excessive force); see also *Rising-Moore v. Wilson*, 2005 WL 1607187, *12 (S.D. Ind. July 7, 2005) (Barker, J.) (concluding that, consistent with *Kemezy*, police officers and governmental entity employers may be liable for battery claims despite the extensive immunity coverage of the ITCA); *Phelps v. Hamer*, 2004 WL 1146489, *13-14 (S.D. Ind. May 10, 2004) (Hamilton, J.) (denying summary judgment on battery claim on basis of *Kemezy*).

In considering questions of state law, this court must determine the issues as it believes the Indiana Supreme Court would.  See, *e.g.*, *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 719 (7th Cir.1994); *Dameron v. City of Scottsburg*, 36 F. Supp. 2d 821, 831 (S.D. Ind. 1998).  The state supreme court's decision in *Kemezy* is squarely on point here, and the state court itself has not overruled it.  This court cannot currently predict that the state court will overrule the result in *Kemezy*, even if it might use a different analysis in the future.  One should not conclude too readily that the Indiana legislature intended to leave Indiana citizens without a remedy under state law if police officers inflict unreasonable and excessive force upon them.  Under *Kemezy*, defendants are not immune from plaintiff's state law battery claims.

*Conclusion*

Because the record presents genuine issues of material fact, the court denies defendants' motion for summary judgment with respect to the federal excessive force claims against defendants Gregory and Parnin and the state battery claims against all defendants.  The case remains stayed as to defendant Smith.  Defendants are granted summary judgment as to all federal and state claims of unlawful arrest or detention, and any federal claims against the Marion County Sheriff and the City of Indianapolis.  This case remains set for trial on Monday, November 14, 2005, against all defendants other than Smith.


So ordered.


Date: October 19, 2005

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Paul T. Belch
LAW OFFICE OF ST. PAUL TRAVELERS
pbelch@stpaultravelers.com

Richard A. Waples
WAPLES & HANGER
richwaples@aol.com

JauNae M. Hanger
WAPLES & HANGER
hangerj@iquest.net

David R. Brimm
WAPLES & HANGER
dbrimm@wapleshanger.com

Andrew J. Mallon
OFFICE OF CORPORATION COUNSEL
amallon@indygov.org